1

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

3

4       **SONIA HERNANDEZ,**

5            **Plaintiff,**

6                 **v.**                                    **Civil No. 09-1379 (GAG)**

7       **WAL-MART PUERTO RICO, INC.,**

8            **Defendant.**

9

10                              <u>**OPINION AND ORDER**</u>

11          Plaintiff Sonia Hernandez ("Plaintiff") brings this action against Defendant Wal-Mart Puerto

12   Rico, Inc. ("Defendant").   (Docket No. 1.)   Plaintiff alleges multiple violations of the Age

13   Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.[1]  Plaintiff alleges that

14   Defendant has discriminated against her because of her age and has retaliated against her for

15   bringing a previous claim against Wal-Mart.

16          Presently before the court is Defendant's motion for summary judgment (Docket No. 27).

17   Plaintiff timely opposed the motion (Docket No. 40) and Defendant filed a reply brief (Docket No.

18   55).  After reviewing the parties submissions and pertinent law, the court **GRANTS** Defendant's

19   motion for summary judgment (Docket No. 27).

20   **I.     Legal Standard**

21          Summary judgment is appropriate when "the pleadings, the discovery and disclosure

22   materials on file, and any affidavits show that there is no genuine issue as to any material fact and

23   that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual

24   dispute is "genuine" if it may reasonably be resolved in favor of either party, and a "material fact"

25

26

27          [1] Plaintiff's allegations of a violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201
     et seq., and Law 379 of May 15, 1948 have been dismissed pursuant to stipulation of the parties.  (<u>See</u> Docket No. 25.)

28

1   is one that has the potential of affecting the outcome of the case. <u>Calero-Cerezo v. U.S. Dep't. of</u>

2   <u>Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). The moving party has the initial burden of showing there is

3   no genuine issue as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). This

4   burden may also be discharged by showing there is insufficient evidence to support the nonmoving

5   party's case. <u>Id</u>.

6   **II.      Factual and Procedural Background**

7          Consistent with the summary judgment standard, the court states the facts in the light most

8   favorable to Plaintiff. <u>See</u> <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006). The court has

9   disregarded all argument, conclusory allegations, speculation, and improbable inferences disguised

10  as facts. <u>See</u> <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006).

11         Plaintiff Sonia Hernandez began working for Wal-Mart in 1995. At some point thereafter,

12  Plaintiff was transferred to the Sam's Club division. In June 2003, Plaintiff filed a complaint before

13  the Antidiscrimination Unit of the Commonwealth Department of Labor and Human Resources

14  alleging age discrimination by Wal-Mart. In April 2004, Plaintiff filed a complaint under the ADEA

15  in the United States District Court for the District of Puerto Rico, claiming that she had been

16  subjected to age discrimination as well as retaliatory conduct. Plaintiff was promoted to the position

17  of Buyer I in April of 2006. Plaintiff then filed a voluntary dismissal of the complaint, with

18  prejudice, in May 2006.

19         After Plaintiff's promotion, she was supervised by Pablo Morales ("Morales"). At a later

20  date, Luis Rivera ("Rivera") became Plaintiff's instant supervisor and Morales became Rivera's

21  supervisor. The Buyer I position required her to maintain a cordial and productive relationship with

22  merchandise suppliers and vendors. (<u>See</u> Docket No. 27, Exhibit 1 at ¶ 19.) It also required Plaintiff

23  to be available and responsive to suppliers and vendors. Plaintiff's responsibilities, among other

24  things, included the recommendation and pre-selection of merchandise for specific product areas for

25  Defendant's stores. Plaintiff worked as a buyer in various product areas for several years and

26  eventually became the "snacks buyer" responsible for all nine Sam's Club stores in Puerto Rico.

27         In March 2007, Plaintiff received a salary increase and other benefits based on her

28  performance evaluation. (<u>See</u> Docket No. 44.)

During a general buyers meeting in August or September 2007, Rivera stated that old people have a difficult time learning ("*Porque tú sabes que la gente vieja es bien difícil para que aprendan.*"). (See Docket No. 27, Exhibit 4 at 255-58.)  In the months of November and December 2007, Morales told Plaintiff on two separate occasions that she was getting old because she could not remember anything ("*Te estás poniendo vieja que no te acuerdas de nada.*"). (See Docket No. 27, Exhibit 4 at 261-62.)

During the last few months of Plaintiff's employment, Defendant received complaints from several suppliers and vendors regarding Plaintiff's job performance.  (See Docket No. 27, Exhibit 1 at ¶ 20-1.)  These complaints ranged from lack of communication to poor job performance.  Although Plaintiff was not formally reprimanded for these complaints, Rivera, did meet with Plaintiff to discuss some of these complaints.  (See Docket No. 34, Exhibit 5 at ¶ 38;  Docket No. 38 at ¶ 27.)  Plaintiff explained that many of the situations leading up to these complaints were out of her control and, therefore,  responsibility could not be attributed to her.  After receiving a number of complaints, Defendant conducted an internal investigation of Plaintiff's job performance.  (See Docket 27, Exhibit 28 at ¶ 16; Docket No. 34, Exhibit 5 at ¶ 37).

Plaintiff was terminated on January 15, 2008.  Upon her termination, Plaintiff's duties were divided among Rivera and an employee in a Buyer I position.  In February 2008 Plaintiff filed a complaint of discrimination against Wal-Mart before the Equal Employment Opportunity Commission ("EEOC").  This complaint alleged that Plaintiff was terminated as retaliation for her previous complaint under the ADEA.  The EEOC issued a right-to-sue letter on January 29, 2009. The current complaint was filed before this court on April 24, 2009.  Defendant's motion for summary judgment was filed May 28, 2010.

**III.    Discussion**

Before looking to Defendant's motion for summary judgment there are a number of motions to strike (Docket Nos. 36, 37, 52 & 56) that the court must first address.

**A.    Motions to Strike**

**1.    Compliance with Local Rule 56 (Docket No. 36)**

Local Rule 56(e) requires record citations in both "statement[s] of material facts" to be cited

to "the specific page or paragraph of identified record material supporting the assertion." Local Rule 56(e). "The court may disregard any statement of fact not supported by a specific citation." Local Rule 56(e). Plaintiff's motion (Docket No. 36) requests that Defendant's statement of uncontested fact, or in the alternative, all statements based on Exhibit 5 and 23 be stricken from the record for failure to provide specific citations. Defendant submitted a document (Docket No. 48, Exhibit A) with its reply brief providing specific citations to exhibits and the corresponding statement of fact it supported. "The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Investment, LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008). The court has discretion in applying this rule and declines to strike all of Defendant's statement of facts based on Exhibits 5 and 23, as Defendant has cured this defect. Further, both the contested exhibits and Defendant's statement of facts are presented in chronological order. In the present case, the exhibits correspond with Defendant's statement of uncontested facts, relieving the court of any necessity to search the record for factual support. See Local Rule 56(e).

### 2. Failure to Authenticate Exhibits (Docket No. 37)

"Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. 56(e)). Defendant has not provided authenticating affidavits for many of its exhibits. Plaintiff's motion (Docket No. 37) requests that these exhibits be stricken from the record. Defendant argues that the exhibits are properly authenticated because the documents were produced under oath during discovery or because they were authenticated by Plaintiff during her deposition testimony.

While the submitted documents have been provided in response to interrogatories, "answers to interrogatories are subject to exactly the same infirmities as affidavits" in summary judgment proceedings. Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990). "Although such answers may be given effect so far as they are admissible under the rules of evidence, they should be accorded no probative force where they are not based upon personal knowledge or are otherwise deficient." Id.

Defendant's interrogatories were signed by Acting Regional Manager, Carmen Benitez

("Benitez").  The nine pages of answers were accompanied by 670 pages of discovery information.

The court finds it unlikely that Benitez has personal knowledge of all of this information.  Only

those exhibits which are clearly premised on Benitez's personal knowledge are authenticated by the

affidavit attached to the answers to interrogatories.  See Garside, 895 F.2d at 49 (stating that

information not based on personal knowledge of affiant was not admissible).  Exhibits 4 and  27,

from Plaintiff's personnel file, and the email addressed to Ms. Benitez and attached to Exhibit 5 are

authenticated by the answers to interrogatories.[2]  Where there is no clear indication of personal

knowledge, the court has not attempted to discern which of the hundreds of pages would be

authenticated through the answers to interrogatories.

Additionally, Defendant argues that many submitted documents were properly authenticated

during Plaintiff's deposition testimony.  A document may be authenticated through the testimony

of a witness with knowledge. Fed. R. Evid. 901.  Defendant cites to pages of deposition testimony

which discuss several documents in detail, including the specific subject matter of the document,

individuals involved in written correspondence and dates on which correspondence was sent. (See

Docket No. 49.)  Plaintiff's deposition testimony does not contest the authenticity of any document

presented and often corroborates the information presented in the documents.  The documents

discuss different issues which arose during Plaintiff's employment and of which Plaintiff has

personal knowledge.  The documents meeting these requirements[3] are properly authenticated for

purposes of summary judgment.  See Fed. R. Evid. 901.

Finally, Exhibit 29 cannot be considered for purposes of summary judgment.  "Although

public records fall within the hearsay exception for 'public records' in Fed. R. Evid. 803(8), they

must be properly authenticated under Fed. R. Evid. 901 or 902."  Sanchez v. Davila, 2010 WL

728377 (D.P.R.).  Therefore, even if the exhibit fits a hearsay exception, Defendant must still

authenticate the document in order for it to be admissible as evidence.

---

[2] Although Exhibit 6 would have been authenticated in this manner, it has not been considered because Defendant has failed to provide a certified English translation as required by Local Rule 5(g).

[3] Exhibits 8, 11, 14, and 31 have been authenticated through Plaintiff's deposition.

Civil No. 09-1379 (GAG)                         6

### 3.     Attachments to Docket Numbers 48 & 49 (Docket No. 52)

Defendant filed reply briefs (Docket Nos. 48 & 49) with exhibits in response to Plaintiff's motions to strike (Docket Nos. 36 & 37).  Plaintiff argues that these additional filings constitute a refiling or supplementation of Defendant's motion for summary judgment and moves to strike these exhibits.  (See Docket No. 52.)  Plaintiff provides no supporting legal authority nor has the court been able to locate authority prohibiting these additional filings.  However, the court is unable to consider Attachment 3 of Docket No. 49[4] due to a lack of proper authentication.

### 4.     Defendant's motion to strike Plaintiff's Exhibit 1 (Docket No. 56)

After Defendant filed for summary judgment, Plaintiff submitted a personal affidavit. (Docket No. 39, Exhibit 2.)  Defendant's motion to strike (Docket No. 56) argues that Plaintiff's affidavit is a "sham affidavit" which contains facts contrary to Plaintiff's deposition testimony in an attempt to create an issue of material fact.

It is established in the First Circuit that summary judgement cannot be avoided by an affidavit which is "clearly contradictory" to prior testimony and does not provide a "satisfactory explanation of why the testimony is changed." Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994)).  The court is also "entitled to disregard any completely new incident . . . described for the first time in [the nonmovant's post summary judgment] affidavit, assuming that prior questions had clearly asked for such information." Hernandez-Loring, 233 F.3d at 55.  Defendant points to several statements in Plaintiff's affidavit which directly contradict statements made by the Plaintiff during her deposition testimony.  (See i.e., Docket No. 54, ¶ 25, 28, 37.)  Plaintiff has provided no explanation for these changes.  Additionally, new instances of discriminatory conduct arose in Plaintiff's affidavit which were not disclosed when additional instances of discriminatory conduct were requested during

---

[4] Both the second and third attachment to Docket No. 49 are numbered as "Attachment 2."  The court will not consider the attachment entitled "Exhibits to Pttf's Deposition," which is the third attachment.

**Civil No. 09-1379 (GAG)**                    7

Plaintiff's deposition.[5]

Statements which are directly contradictory to Plaintiff's deposition testimony or which appear for the first time in Plaintiff's post summary judgement affidavit have not been considered by the court.  Hernandez-Loring, 233 F.3d at 55.

> **B.    Defendant's motion for summary judgment (Docket No. 27.)**
>
> **1.    Discriminatory Termination and Disparate Treatment**

The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).   In assessing an ADEA claim where there is no direct evidence of discrimination, the court applies the burden shifting framework established in McDonnell Douglas. See 411 U.S. 792 (1973);  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113 (1st Cir. 1993) (citations omitted).  Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to defendant to provide a legitimate, non-discriminatory reason for the adverse employment action.  Zapata-Matos v. Reckitt & Colman, Inc., 227 F.3d 40, 44 (1st Cir. 2002) (citing Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008)).

A *prima facie* case for age discrimination[6] under the ADEA, requires a plaintiff to prove: (1) that she was over 40 years old; (2) that she has met her employer's legitimate job expectations; (3) that the employer took adverse action against her and; (4) she was replaced by a person with roughly equivalent job qualifications.  Phair v. New Page Corp., 708 F. Supp. 2d 57, 63-64 (1st Cir. 2010). The Supreme Court has declared that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the

---

[5] During her deposition, Plaintiff was asked if there were any other things which led her to the conclusion that she was discriminated against.  The Plaintiff did not recall anything further than the three previously mentioned comments.  Plaintiff's affidavit alleges that she was subjected to these comments on several occasions.  Plaintiff also alleges that she was treated more harshly than younger employees during a buyers meeting.  These instances were not mentioned when Defendant clearly asked for such information during Plaintiff's deposition. Therefore, these instances cannot be considered now.  See Hernandez-Loring, 233 F.3d at 55.

[6] Plaintiff's complaint alleges both discriminatory termination as well as discriminatory treatment.

challenged adverse employment action." Gross v. FBL Fin. Services, Inc., --- U.S. ---, 129 S.Ct. 2343, 2352 (2009). "The Court declared in Gross that this 'but for' standard is a much higher standard than that which has been applied to Title VII cases." Montanez v. Educ. Tech. C., 660 F. Supp.2d 235, 241 (D.P.R. 2009).

According to the First Circuit, Plaintiff's burden to demonstrate a *prima facie* case is relatively easy to meet. See Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) (referring to a *prima facie* case as a "modest showing"); Zapata-Matos, 277 F.3d at 44 (describing it as "the low standard of showing *prima facie* discrimination"). Under the McDonnell Douglas burden shifting framework, once this *prima facie* case is shown, a presumption of discrimination arises and the burden of production then shifts to the defendant employer to show a "legitimate, non-discriminatory reason" for the termination. Id. If an employer's non-discriminatory explanation is considered adequate by the trier of fact, the presumption drops out and the plaintiff must then show that the employer's explanation is a pretext for discriminatory action. Id. at 45 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000)).

In the present case, taking all inferences in light most favorable to the nonmovant, Plaintiff Hernandez has established a *prima facie* case of age discrimination. Plaintiff was sixty three (63) years of age upon her termination from Wal-Mart. (See Docket No. 39, Exhibit 2 at ¶ 56.) Plaintiff was qualified for her position based on her years of experience as a buyer and assistant buyer in a number of stores, including both Wal-Mart and Sam's Club. (See Docket No. 27, Exhibit 4 at 15.) Additionally, Plaintiff was granted a salary increase in early 2007 based on her performance evaluation. (See Docket No. 44.) The court does not consider Defendant's argument that Plaintiff was not qualified due to job performance at this time because "a court may not consider the employer's alleged non-discriminatory reason for taking an adverse employment action when analyzing the *prima facie* case." Thermo King, 585 F.3d at 448 (citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003)). Upon her termination, Plaintiff's responsibilities were divided among an employee also holding the Buyer I title as well as Plaintiff's supervisor, Rivera. (See Docket No.27, Exhibit 5 at ¶ 42.) After another employee was promoted to Buyer I,

**Civil No. 09-1379 (GAG)**                    9

he also took on some of Plaintiff's responsibilities.  The fact that those who took over Plaintiff's responsibilities had the same title as Plaintiff is sufficient evidence of equivalent job qualifications to satisfy the fourth prong of the *prima facie* case.  See Aponte Diaz v. Navieras Puerto Rico, Inc., 130 F. Supp. 2d 246, 251 (D.P.R. 2001).  At this point, Plaintiff has presented a *prima facie* case of age discrimination and the burden of production shifts to Defendant to provide a legitimate, non-discriminatory reason for Plaintiff's termination.  See Zapata-Matos, 277 F.3d at 44.

Defendant alleges that Plaintiff's termination was the result of deficient relationships with suppliers and lack of commitment to the company.  (See Docket No. 34, Exhibit 5 at ¶ 39-40.)  This assertion is supported by affidavits of Plaintiff's former supervisors, numerous email chains, and portions of Plaintiff's own deposition testimony.[7]  These documents demonstrate that Defendant had received complaints regarding Plaintiff's job performance in the last months of her employment from persons outside of Wal-Mart.  Specifically, one company had issues with Plaintiff's communication skills regarding orders of a specific Sam's exclusive item.  (See Docket No. 34, Exhibit 11.)  Another client was unable to get necessary information from Plaintiff about a planned food sampling.  (See Docket No. 34, Exhibit 8.)  Another instance resulted in suppliers from Denmark having to travel to Puerto Rico to meet with Plaintiff's supervisors.  (See Docket No. 27, Exhibit 23 at ¶ 12.)  These instances caused financial losses and strained relationships with merchandise suppliers.  (See Docket No. 27, Exhibit 23 at ¶ 17; Docket No. 34, Exhibit 5 at ¶ 40.)  To invalidate the presumption of discrimination Defendant's proffered non-discriminatory reason "need not persuade the court that it was actually motivated by the proffered reason." St. Mary's, 509 U.S. at 510-11 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  Based on admissible evidence, Defendant has proffered a potential non-discriminatory reason for Plaintiff's termination.  As Defendant has met its burden of production, the burden shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendant's proffered reason for termination is a pretext for discriminatory action.  St. Mary's, 509 U.S. at 507-08.

[7] Not all exhibits submitted by Defendant were considered due to a lack of proper authentication as discussed above.  In particular, Exhibits 13, 17, 19, 20 and 21, referred to as the "Kelsen Binder," were not considered due to Defendant's failure authenticate these documents.

Plaintiff alleges three separate instances in which comments regarding age were made by her supervisors.  During a general meeting in August or September 2007, Rivera allegedly said that "It is very hard for old people to learn." (See Docket No. 27, Exhibit 4 at 255-58.)  Plaintiff alleges that on two separate occasions, Morales told her that she was getting old and could not remember anything.  (See Docket No. 27, Exhibit 4 at 261.)  These three comments are the only instances of age discrimination reported by Plaintiff.[8]  "[S]tray remarks" are normally not "significantly probative of pretext absent some discernible indication that its communicative content, if any, materially erodes the stated rationale for the challenged employment action." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001).

These statements, as presented, do not call into doubt Defendant's proffered reason for termination and cannot support a finding that Plaintiff would not have been terminated "but for" her age.  Gross, 129 S.Ct. at 2343.  Although both supervisors were involved in the decision to terminate Plaintiff, their comments, without corroborating circumstances, are not enough to infer that Defendant terminated Plaintiff due to her age.  Plaintiff classifies the statement made by Rivera as a general statement and cannot clarify the surrounding context.  (See Docket No. 27, Exhibit 4 at 258-59.)  Plaintiff alleges the comment must have been directed at her because she was the only "old person" present.  (See Docket No. 27, Exhibit 4 at 255-57.)  Additionally, the decision to terminate Plaintiff was made in conjunction with several other people after the completion of an internal investigation.  (See Docket No. 27, Exhibit 23 at ¶ 16; Docket No. 34, Exhibit 5 at ¶ 37.)  "Faced with a motion for summary judgment, it [is Plaintiff's] burden to establish that there exist[s] evidence creating a trial-worthy claim" that Defendant was motivated by her age.  Hernandez-Loring, 233 F.3d at 53.  While Rivera and Morales may have been in a position to influence the other decisionmakers, nothing in the record allows the court to make this inference.

Plaintiff also states that the situations leading to the complaints against her were outside of her control and, therefore, the responsibility for these situations does not rightfully fall on her.  (See

---

[8] Plaintiff also alleges a separate incident involving herself and a younger employee.  The court has not considered this incident because Plaintiff has not provided a reliable foundation for her knowledge of the other employee's personnel file.

Docket No. 39, Exhibit 2 at ¶ 27-38.)  Regardless of culpability, the evidence on record shows that Defendant received complaints against the Plaintiff.  Under the ADEA, an employer is able to terminate an employee for any reason as long as it is not motivated by the employee's age or retaliation for taking part in protected conduct.  See 29 U.S.C. § 623.  The courts "may not sit as super personnel departments assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions."  Webber v. International Paper Co., 417 F.3d 229, 238 (1st Cir. 2005).  Plaintiff admits there were issues with several vendors or suppliers and recognizes that she notified her supervisors about such issues.  (See Docket No. 38 at ¶ 27.)  Plaintiff has not provided any evidence which could lead to the inference that these complaints were fabricated to disguise Defendant's discriminatory intent.

Plaintiff also attempts to exhibit pretext by showing that the Defendant did not follow its standard business practice when it failed to coach Plaintiff with respect to the complaints received. See Kouvchinov v. Parametric Technology Corp., 537 F.3d 62, 68-69 (1st Cir. 2008) (stating that pretext can be "demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices").  Defendant does not contest this and plainly admits that the "normal coaching process" was not followed due to the seriousness of the complaints received and Plaintiff's refusal "to take any responsibility whatsoever."  (See Docket No. 34, Exhibit 5 at ¶ 40.) While both parties allude to this standard practice, no evidence has been submitted to establish what this practice entails or whether it is discretionary or mandatory.  "[W]here an employer's approach to personnel matters is flexible or discretionary, there is by definition no standard practice from which to deviate."  Kouvchinov, 537 F. 3d at 68-69.  Plaintiff has failed to provide any evidence to show that Defendant was obligated to use this process or to show that other employees in similar circumstances have been offered coaching.  Without further information, the court is unable to infer that Defendant deviated from its standard practice.

Plaintiff has failed to provide evidence to call into question the veracity of Defendant's non-discriminatory reason for termination.

Accordingly, the court **GRANTS** Defendant's motion for summary judgment with respect to both the disparate treatment and discriminatory termination claim.

### 2.    Retaliation

In addition to providing a cause of action for age discrimination, the ADEA also provides a cause of action for individuals whom are subjected to retaliation for invoking the statute's protection. 29 U.S.C. § 623(d).  To make out a claim for retaliation the plaintiff must make a *prima facie* showing that (1) she engaged in ADEA-protected conduct; (2) she was thereafter subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).

Plaintiff meets both the first and second prong, but fails to present admissible evidence which could lead to an inference of causal connection.  Plaintiff engaged in protected conduct by filing a claim under the ADEA against Defendant in 2004.  See 29 U.S.C. § 623(d).  Plaintiff was terminated from her employment nearly four years later.  In order to succeed, Plaintiff must show that her termination was in retaliation for filing her previous claim.  Plaintiff is unable to make this showing.

During her deposition, Plaintiff testified that she did not know who was responsible for the decision to terminate her employment.  (See Docket No. 27, Exhibit 4 at 265.)   Additionally, Plaintiff was unable to recall if anyone had ever mentioned the previous lawsuit against Defendant. (See Docket No. 27, Exhibit 4 at 264.)  Based on the admitted evidence, there is no direct or circumstantial evidence which could lead the court to infer a connection between the Plaintiff's termination and the previous complaint against Defendant.  Without this showing, Plaintiff is unable to present a *prima facie* case and cannot prevail on this claim.  See Bibiloni Del Valle v. Puerto Rico, 661 F.Supp.2d 155, 168 (D.P.R. 2009).

Summary judgment may be granted when the evidence produced is not sufficient to support the nonmovant's position.  Celotex, 477 U.S. at 322.  Plaintiff is unable to satisfy her *prima facie* case of retaliation.  For this reason, the court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim.

### B.    State Claims

Notwithstanding the different evidentiary paths between Plaintiff's federal and state law claims, the result is the same under federal and state law.  See Colon-Muriel v. Asociacion de Suscripcion Conjunta, 449 F. Supp. 2d 98, 112 (D.P.R. 2007).  Based on the facts previously

**Civil No. 09-1379 (GAG)**                13

discussed and analyzed, the court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's state claims.

**IV.     Conclusion**

      For the reasons set forth above, the court **GRANTS** Defendant's motion for summary judgment (Docket No. 27).

      **SO ORDERED**.

      In San Juan, Puerto Rico this 29th day of October, 2010.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge
